AO 472  (Rev. 11/16) Order of Detention Pending Trial

United States District Court
Southern District of Texas

**ENTERED**
February 01, 2019
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| United States of America | ) |
|---|---|
| v. | ) |
|  | ) Case No. G-19-CR-002 |
| Warren C. Clark | ) |
| *Defendant* | ) |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☐ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or

☒ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A.  Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

☐ **(e)** any felony that is not otherwise a crime of violence but involves:
**(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**

☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**

☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**

☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

**X** **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

- ☐ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);
- ☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;
- **X** **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
- ☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**
- ☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

**X** **C. Conclusions Regarding Applicability of Any Presumption Established Above**

**X** The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis. *(Part III need not be completed.)*

**OR**

☐ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

### Part III - Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

**X** By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

**X** By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

- **X** Weight of evidence against the defendant is strong
- **X** Subject to lengthy period of incarceration if convicted
- ☐ Prior criminal history
- ☐ Participation in criminal activity while on probation, parole, or supervision
- ☐ History of violence or use of weapons
- ☐ History of alcohol or substance abuse
- **X** Lack of stable employment
- ☐ Lack of stable residence
- ☐ Lack of financially responsible sureties
- ☐ Lack of significant community or family ties to this district
- ☐ Significant family or other ties outside the United States
- ☐ Lack of legal status in the United States

☐ Subject to removal or deportation after serving any period of incarceration
☐ Prior failure to appear in court as ordered
☐ Prior attempt(s) to evade law enforcement
☐ Use of alias(es) or false documents
**X** Background information unknown or unverified
☐ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:
Warren C. Clark is under indictment for attempting to provide material support to a designated foreign terrorist organization, pursuant to 18 U.S.C. § 2339B. Section 2339B is listed in 18 U.S.C. § 2332b(g)(5)(B) and is punishable by a term of imprisonment of twenty years. Therefore, under 18 U.S.C. § 3142(e)(3)(C), there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Mr. Clark and the safety of the community.

At the hearing, the court heard testimony of FBI Task Force Officer Scott Sosa. The court also admitted and considered thirteen government exhibits. The defendant's father, Warren Clark, testified on the defendant's behalf. The court took notice of the Pretrial Services Report. The following is a general summary of the evidence presented at the hearing.

Mr. Clark came to the FBI's attention in 2011 when it learned of the YouTube channel "Jihadi Fan Club." Various posts and/or videos on the channel sponsored views in favor of suicide bombings and killing of enemies. Clark admitted having control over this YouTube channel.

The FBI learned in 2013 that Clark was planning to travel to Saudi Arabia. In an interview before leaving the country, Clark denied making any statements against the United States or any desire to support violence.

In 2014, the FBI learned that Clark had contacted a citizen of the United Kingdom who supported the Islamic State (ISIS). Also in 2014, the FBI became aware of Clark making postings on a Muslim public service website in support of ISIS. Clark made statements that he believed ISIS was "bringing justice," that ISIS "spreads by force," and that Islam is not a pacifist religion.

In 2015, Clark travelled to Saudi Arabia for a job with Saudi Aramco. He was soon fired from that job. Saudi Aramco bought Clark an airline ticket back to the United States via Turkey. Clark did not return to the United States, however. Instead, once in Turkey, he crossed the border into Syria and began his engagement with ISIS.

The court admitted into evidence what appear to be chat conversations between Clark and a person Officer Sosa identified as a seventeen-year-old. During the discussion, the teen claimed he wanted to travel to the Islamic State for the purpose of becoming a martyr. Clark encouraged the teen and discussed how he might be able to travel to Turkey and that Clark would be willing to help him once he arrived.

The court admitted into evidence several of Clark's social media posts. The posts appear to have been made while Clark was still in Turkey, before he crossed into Syria. In summary the posts praise ISIS, defend the terror group's ideology, and generally approve of the terror group's activities, including use of violence. The final social media post, dated September 8, 2015, announces that Clark was then living in the Islamic State. He described undergoing military training. The post describes in some detail what life is like in ISIS territory. Clark did not appear to be in distress.

The court admitted into evidence several of Clark's emails to his family. Clark stated in one email to his sister that he was "happy and safe in the Islamic State and [he] moved [there] to help build the state." He explained that he did not go there to fight. He also requested that his sister not contact the government because he "would prefer them not to know [his] situation." There is no indication that Clark was in Syria or Iraq against his will. In another email dated September 27, 2015, Clark stated to his sister that he had no intention of returning to the United States, that he was a citizen of the Islamic State, and no longer a citizen of the United States. He went on to say that he would not "risk [his] freedom and safety to come back to be humiliated or imprisoned."

Clark appears to have ceased all communication with his family in 2015 and was not heard from again until late

December 2018 when he was found in the custody of the Syrian Democratic Forces. In January 2019, while still in Syria, Clark gave a televised interview with a reporter. During the interview, Clark did not appear to be in distress. He did not claim to have been abducted. He acknowledges that, before he crossed the Turkish border into Syria, he knew about the violence committed by ISIS, but nevertheless wanted to go there and "see what the group was about."

Mr. Clark's father, Warren Clark, testified at the hearing. He stated he would be willing to let Clark live with him, that he would sign a bond for the defendant, and that he would be willing to serve as a third-party custodian. Mr. Clark also testified that he believed his son had been kidnapped by ISIS. The court notes that there is no other evidence of that claim, and it is entirely contradicted by all the evidence.

Based on the evidence introduced at the hearing, the court concludes that the presumption that Clark presents a risk of flight and a danger to the community has not been rebutted. There is no evidence about what Clark was doing for the last three years while with ISIS in Iraq and Syria. There is no evidence to rebut the presumption of dangerousness. As for the risk of flight, evidence at the hearing demonstrated that Clark has a good family and a viable residential option, but his family has been out of contact with him for three years. Clark's father is convinced his son was kidnapped, despite strong evidence to the contrary presented at the hearing. The court therefore finds that Clark's father's testimony is insufficient to rebut the presumption that the defendant poses a risk of flight.

To the extent that the presumptions have been rebutted, the court finds by a preponderance of the evidence that Clark is a flight risk and by clear and convincing evidence that he poses a danger to the community.

Mr. Clark has a demonstrated ability to travel and to virtually disappear for years at a time. He has professed allegiance to a foreign terrorist organization. He has stated that he does not want to be in the United States and told his sister not to contact the government for fear that they might bring him back. While the defense has argued that Clark's parents and lawyer tried to bring Clark back, there is no evidence that Clark wanted to return. Clark did not claim during the televised interview that he was kidnapped or held against his will. He told the reporter that he did not fight for ISIS and that he "had no regrets."

Clark is a clear danger. Part of the danger that ISIS poses is its online presence. Clark, before physically joining ISIS, was part of that online danger. He enticed a teenager to join ISIS and has repeatedly defended and promoted ISIS online. The court does not believe that any condition it imposes will prevent Clark from engaging in those sorts of activities if he is released on bond. Moreover, in his televised interview, Clark compared the crucifixions and beheadings carried out by ISIS to executions carried out in the United States. He appears to have normalized the violence of that terror group. That in conjunction with Clark's strong support of ISIS demonstrates that he would pose a danger if released.

## Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant must be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date:        February 1, 2019

Peter Bray
United States Magistrate Judge