IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | CASE NO. 3:19-CR-00002-1 |
|---|---|---|
| | § | HOUSTON, TX |
| VERSUS | § | THURSDAY, |
| | § | FEBRUARY 8, 2024 |
| WARREN C. CLARK | § | 10:18 a.m. to 10:49 a.m. |

SENTENCING

BEFORE THE HONORABLE GEORGE C. HANKS, JR.
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PARTIES:                SEE NEXT PAGE

ELECTRONIC RECORDING OFFICER: UNKNOWN

COURT CLERK:                    UNKNOWN

TRANSCRIPTION SERVICE BY:

Veritext Legal Solutions
330 Old Country Road, Suite 300
Mineola, NY 11501
Tel: 800-727-6396 ▼ www.veritext.com

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

                                      APPEARANCES:

FOR THE PLAINTIFF:            U.S. ATTORNEY'S OFFICE
                             Stephen Mark McIntyre
                             Craig M. Feazel
                             1000 Louisiana Street, Ste 2300
                             Houston, TX 77002
                             713-567-9572

                             U.S. DEPARTMENT OF JUSTICE
                             NATIONAL SECURITY DIVISION
                             Michael Dittoe
                             950 Pennsylvania Avenue NW
                             Washington, D.C. 20530


FOR THE DEFENDANT:           PAUL DOYLE & ASSOCIATES PC
                             Paul H. Doyle
                             Trevor Scott Sharon
                             440 Louisiana Street, Ste 2300
                             Houston, TX 77002

                             FOREMAN DeGUERIN DeGUERIN
                             Mike DeGeurin, St.
                             300 Main Street, 3rd Flr
                             Houston, TX 77002
                             713-655-1812

HOUSTON, TEXAS; THURSDAY, FEBRUARY 8, 2024; 10:18 AM

CLERK:  The United States District Court is now in session, the Honorable George C. Hanks, Jr. now presiding.  God save these United States and this Honorable Court.

THE COURT:  Please be seated, everyone.  The next case before the Court this morning is Clause No. 3:19-CR-2-1, United States of America v. Mr. Warren C. Clark.  Mr. Clark, if you can come forward, and Counsel, if you can come forward.

Good morning, everyone.  If you could just introduce yourselves to the Court and state the parties you represent, starting with the government.

MR. McINTYRE:  Mark McIntyre for the United States. I'm with the U.S. Attorney's Office.  And also Craig Feazel with the U.S. Attorney's Office and then Michael Dittoe who's with the Department of Justice Counterterrorism Section.

THE COURT:  Okay.  Welcome, everyone.

MR. FEAZEL:  Good morning, Your Honor.

THE COURT:  And welcome, Mr. Clark.  And then on behalf of Mr. Clark?

MR. DOYLE:  Paul Doyle with Mr. Clark as well as Trevor Sharon.

THE COURT:  Okay.  Welcome, sir.

We're here, Mr. Clark, for your sentencing on the charges that have been brought against you.  And before we get started, I need to go through with Counsel and make sure that

I've received everything that has been filed in this case that's relevant to the sentencing.

I've reviewed the joint memorandum to clarify the punishment range, the presentence investigation report, the addendum to the presentence investigation report, the plea agreement, the information that was filed in this case and the indictment, the defendant's objection to the presentence report, the government's response to the defendant's objection to the presentence report, the defendant's memorandum in aid of sentencing, including all of the attachments that were made to that memorandum.

I've got those. And that's it. Are there any other documents the parties believe the Court should have reviewed that I didn't just mention in preparation for the sentencing? Counsel?

MR. McINTYRE: No, Your Honor.

THE COURT: And Counsel?

MR. DOYLE: No, Your Honor.

THE COURT: Is anyone expecting an evidentiary hearing this morning? Either side?

MR. DOYLE: No, Your Honor.

MR. McINTYRE: No, Your Honor.

THE COURT: And Counsel, have you read and discussed the presentence report and the addendum to the presentence report with Mr. Clark?

MR. DOYLE:  We have, Your Honor.

THE COURT:  Okay.  And have you discussed the objections that you made on his behalf?

MR. DOYLE:  We have, Your Honor.

THE COURT:  And are there any witnesses that are present in the courtroom that you expect to testify this morning?

MR. DOYLE:  No, Your Honor.

THE COURT:  First thing, Counsel, we need to address is the -- are the defendant's objections to the presentence investigation report.  With respect to the objection to the offense conduct description in the presentence investigation report, the Court overrules that objection and states it does so based on the reasons set forth in the addendum to the presentence investigation report, Mr. Clark.

The objection to the lack of reduction pursuant to USSG Section 3E1.1(a) and (b).

MR. CLARK:  Is this a 12-point reduction?

THE COURT:  This is the three-level reduction because you plead guilty.

MR. CLARK:  Okay.

THE COURT:  And it -- and I guess I need to ask; has there been any other indication of acceptance of responsibility since this addendum has been filed from the government?

MR. McINTYRE:  Not that we're aware of.

THE COURT:  Okay.  Counsel?

MR. DOYLE:  No, Your Honor.

THE COURT:  Okay.

MR. CLARK:  I mean, as far as acceptance of responsibility, I would like to explain why it is, you know, that I chose to take route.  Maybe they don't -- I don't know (indiscernible).

THE COURT:  Oh, yes, sir.  Before the court issues a sentence in this case, you will have an opportunity to let the Court know of any information which the Court should consider in determining the appropriate sentence.  So, you will have an opportunity to do so.

MR. CLARK:  Okay.

THE COURT:  But the objection that was made by counsel, respectfully, is overruled.  And also the objection with respect to the alias names by the defendant, those objections are also respectfully overruled.  And, Mr. Clark, the reason why that objection is overruled is that the probation office found evidence to support your use of aliases as reflected in the PSR.

MR. CLARK:  Okay.  I personally haven't seen any of those things, so I (indiscernible).

THE COURT:  Okay.  You've not seen the presentence investigation report?

MR. CLARK:  I've seen the presentence investigation

report, but the aliases, those aliases are -- I might as well (indiscernible) the queen of England.  I've never seen some of those aliases and I've never seen the evidence that says that.

THE COURT:  Okay.  Well, respectfully, the objection is overruled.  Based on the Court's rulings with respect to the objections made, and in accordance with the presentence investigation report and the addendum to the presentence investigation report, the Court finds that the following guideline provisions are applicable in this case.

The total offense level is 38.  The criminal history category is 6, which provides for the following guideline provisions.  Time in custody, 120 months, pursuant to USSG Section 5G1.1(a).  Probation, you're ineligible for.  Supervised release, any term of years or life.  A fine of $25,000 to $250,000.  Restitution, not applicable.  And a special assessment of $100.

Based on the Court's rulings on the objections and the presentence investigation report and the addendum, are these the correct guideline provisions that apply to this case? Counsel?

MR. McINTYRE:  Yes, Your Honor.

THE COURT:  And Counsel?

MR. DOYLE:  Just -- other than our objections, yes, Your Honor.

THE COURT:  Subject to the objections.

MR. DeGUERIN:  And just (indiscernible) departure as well.  (indiscernible).

THE COURT:  Right.  There's no formal motion for downward departure, but I will consider your request as part of our variance.

MR. DeGUERIN:  Judges, we made an oral motion for departure.  As we laid out in our memo, we also could ask for departure under 5K2.0, Subsection B, which allows for downward departure based on unidentified circumstances.  As we outlined in the memo, there's several reasons that Mr. Warren should get a departure.  Since 2015, he's suffered atrocities that I don't think you could possibly imagine that he's gone through.

He's been in custody by ISIS.  He's been tortured by ISIS, according to several eye witness accounts.  He went there to help the people within the territory not to fight for ISIS or help ISIS.  He did commit the offense, but I think for those reasons, and the reasons laid out thoroughly in the memo, the Court should grant departure from 38 to 30 and reduce his criminal history from 6 to 1.

He's clearly not a threat to recidivism.  If you look at the statisticals -- the statistics that we submitted, Judge, he's college-educated.  He doesn't use drugs.  He doesn't use alcohol.  He has no criminal history, zero points besides this.  All that says that he's going to be a low-risk (indiscernible).  And so he's -- the Category 6 criminal history thoroughly

overstates the risk that Mr. Clark is.  He's not violent.  He's not a threat to society the way that Category 6 represents.  He should be a Category 1.

This is important for a lot of reasons, Judge.  One, for Mr. Clark (indiscernible); and two, for the DOP when they locate him into a jail, he shouldn't be put with the criminals that are in Category 6.  He should be put with the criminals that are in Category 1.  And that's why we're requesting a departure to 30 and for criminal history down from 6 to 1.

THE COURT:  Okay.  Response from the government?

MR. DITTOE:  Yes, Your Honor.  The government opposes the downward departure in this case, for the reasons set out in the presentence report.  The defendant's conduct is consistent with the conduct of those who are involved in the type of activities to which 3A1.4 applies.

In addition, Your Honor, our previously filed trial brief outlines the full circumstances of this case, including contact with the 17-year-old Palestinian who was interested in coming to ISIS and a variety of other circumstances, including the defendant's interview with Richard Engel of NBC News (indiscernible) his arrest, in which he actually defended ISIS and defended crucifixion as being the equivalent of the death penalty as opposed (indiscernible).  And for all these reasons, we rely upon our moving papers as opposed to downward departure.

THE COURT: Okay. After consideration of the motion for downward departure, respectfully, the motion for downward departure is denied. The Court finds that the circumstances of this case and the history and characteristics of this defendant do not warrant a downward departure in this matter. So, I will consider your arguments as part of a variance, but I'm not going to consider them as part of a departure in this case.

Mr. Clark, after calculating the guidelines and departures and hearing argument from counsel, I must now consider the relevant factors set out by Congress at 18 USC Section 3553(a) and ensure that I impose a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing. These purposes include the need for the sentence to reflect the seriousness of the crime, to promote respect for the law, and to provide just punishment for the offense.

The sentence should also deter criminal conduct, protect the public from future crime by the defendant, and promote rehabilitation. In addition to the guidelines and policy statements, I must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need to avoid unwarranted sentencing disparities among similarly situated defendants, and the types of sentences that are available.

On behalf of the government, I have read the

memorandums in aide of sentencing filed by both the government and by the defendant in this case, but I'd like to hear first from the government.  Do you wish to argue about the application of the factors set forth in Section 3553(a), request a variance, or otherwise make a sentencing recommendation in this case?

MR. McINTYRE:  Your Honor, the government has recommended a 10-year sentence.  That was (indiscernible) plea agreement.  The parties agreed on a 10-year sentence and a lifetime of supervised release.  We think, under these circumstances, that's an appropriate sentence for the Court, Your Honor.

THE COURT:  Thank you, counsel.

Counsel for Mr. Clark, do you wish to argue about the application of factors set forth in Section 3553(a), request a variance, or otherwise make a sentencing recommendation at this time?

MR. DOYLE:  Judge, just based on what Mr. Sharon's already told you, just request a variance based on those factors.

THE COURT:  Okay. Thank you, sir.

Mr. Clark, before the Court issues a sentence in this case, you have a right to make a statement or present any information you wish the Court to consider in mitigating the sentence.  You mentioned earlier that you like to talk to the

court.  At this time, you have a right to make a statement.

MR. CLARK:  I mean, almost at this point, I don't even know if I should say anything (indiscernible).  I think everybody's (indiscernible), you know, the devil incarnate.  But, you know, I'll still have to say it.

THE COURT:  Yes, sir.

MR. CLARK:  You know, okay.  I mean, first of all, I don't agree with, you know, everything as far as concerns go.  I mean, I've been here for five years.  Can't even give me five minutes to make a statement.

THE COURT:  Yes, sir.  That's why -- this is your opportunity.  Whatever you need to say or would like the Court to know before it sentences you, this is your opportunity.

MR. CLARK:  Okay.  And (indiscernible) at this point, I'm just going to speak the truth about what I feel, and, you know -- whether it's appreciated or not.

Starting in 2019, I have witnessed the government and the three prosecutors, Michael Dittoe, Craig Feazel, and Stephen (sic) McIntyre, use their power and position to bear false witness and slander my name in such a way that it has made people fear me.  Ever since I was a child, it angered me to see men like these prosecutors and the government slander black men and other people of color, such as myself, with the intent to demonize us so that they may justify their own power position.

They use their tongues to vilify and assassinate my character so that they may seem to have the moral high ground. They have painted a false picture so that the world might believe that I'm a cruel savage, an unhinged barbarian, an uncivilized human animal with such wild animalistic tendencies that I am incapable of feeling mercy for humanity and must be kept locked away to keep civilized society safe.

Their untruthful rhetoric did not keep anyone safe and only further perpetuated the negative stereotypes about black men and Muslims, deeming us to be violent and want us to be feared.  The greatest irony is that when you look behind their lies and their fear-mongering, you see that they are more unethical and violent than the ones they point the finger at.

I love humanity and justice and my community, and I have more love in humanity and justice and my opinion of people than the ones that keep me (indiscernible).  Now, Mr. Judge Hanks, I would not make such a bold accusation as this without having anything to back it up with.

In 2015, I traveled to the Middle East.  One of the first places I visited was a university in Mosul, Iraq.  This was a university run and attended by civilians.  I applied there in order to teach English.  Around this time, the U.S. military paid a visit to the same university, but they didn't go there like me to teach the civilian students.  They went there to bomb the university.  This is a war crime.  The

arrogance of this government to bomb a university with civilians and then turn around and pretend to be afraid of the teacher that tried to help the youth at the university is beyond egregious, and I will never understand that kind of illogical logic.

I also had the opportunity to pray at several mosques in Syria.  One mosque I remember in specific, the U.S. military bombed and killed everyone inside.  I watched the people wail as their loved ones were pulled from the road.  If ever I was reminded of white supremacist bombing of churches in the South, it was on this day that I saw this mosque destroyed.

I was also in Syria when the United States bombed an electrical grid in a dam that caused a massive exodus and panic of thousands of people in the city of Raqqa.  This is a war crime.  We all know how much danger damaged dam can be to a civilian population.  We need to look no further than the mass (indiscernible) Morocco last year to see that.

Even when I returned back to the United States, the city of Raqqa that I lived in was still in darkness years later and those people were still living in ruin.  I, myself, openly stated that I wanted to build the infrastructure for the well-being of the people in Syria and Iraq.  And now the person who wanted to help build the infrastructure and help the civilians is being called dangerous by the ones that destroyed the infrastructure.  Oh, the irony in all of that.

While I was in Syria, roads were cut off that prevented life-saving medicine and food and other supplies from reaching civilian populations.  This is a war crime.  I witnessed civilians go hungry and I had to give the last of my food to help children in need that I didn't even know, not knowing where my next meal was going to come from.  I wonder if Mr. McIntyre, Mr. Feazel, and Mr. Dittoe have done the same.

I heard stories of a man who said he had all sons except for his youngest that was a little baby girl.  She was his favorite.  He cried to me and told me how his baby girl died due to indiscriminate violence by coalition forces and a hospital that ran out of medicine.

I saw another man walk down the street searching for medicine for his young son.  I knew that the man's little boy would remain sick because there was no medicine available due to the closed roads.  Never in my life did I think that I would have to witness women washing disposable diapers to put back on their children because there were no more diapers available.

Nor was there any soap available to wash diapers with in the first place.  Or did I ever -- did I think that I would have to witness people cutting the bottoms of the pants of their children because there were no more diapers so their children to go to the restroom on the ground.  Even women could not have access to basic feminine essentials to keep themselves clean.

Woe to the government that had so much prideful arrogance that they would make a group of people live in such humiliation and indignity.  Shame on such arrogance that the government would pretend that it's justice by imprisoning men that went to go help the people who were living in such despair and such desperation.

At the end of the day, the truth is crystal clear. The government doesn't fear me, nor do they feel victimized by me.  That's impossible.  The government can't possibly fear a peaceful, kind-hearted man such as myself.  They can't even bring a single victim to Court today to testify against me.  It is impossible for the ones with blood on their hands to fear the one who has no blood on his.

The real problem the government has is that I'm an educated, intelligent, black Muslim with the courage to say that the government is being unjust.  They hate that a black Muslim that is a descendant of slaves in this country and has two parents that grew up under segregation in the Jim Crow South still has enough pride and courage to speak the truth to power because I do not fear the blame of blamers.

Never has a man, especially a black man, come to the powers that be and told them what they were wrong without being slandered, imprisoned, or even killed.  We need to look no further than Malcolm X, Martin Luther King, Patricia (indiscernible), or (indiscernible) whose only crimes were that

they wanted their people to live in dignity.

The government wastes, of course, time and resources in order to send a clear and loud message.  Their message is, N-word, know your place, stay in your place, and be content with the place we put you whether it be under our knee, under our prison, or under carpet bombs.  The government puts me in jail and calls me a terrorist so that people will think that I am dangerous and will ignore the truth that I have to speak.  But I will not be silenced.

But those who have open minds to see and open hearts to listen, they know the truth.  I see your crocodile tears and your false (indiscernible) allegations.  The whole world does.  You are turning your friends into your enemies.  Your policies are even turning Americans against Americans.  I take apologies very seriously because I am a very sincere person.  I feel that apologies are owed to people who are truly wronged and truly victimized.  I see no suffering -- I see no suffering in people that the government has brought in this courtroom today.

So therefore, it is futile for me to apologize to a victimless court.

THE COURT:  Thank you, Mr. Clark.

Before the Court issues a sentence in this case, Mr. Clark, let me tell you your criminal and irresponsible behavior has betrayed everything that we value as Americans.  Okay?  You assisted the enemies of this great country.  You betrayed your

family.  You betrayed your friends.  You betrayed all of us. Do you really think that your parents back there are proud of you?  Do you think anyone is proud of you?

MAN:  (Indiscernible).

THE COURT:  -- the world.  Sir, please be quiet. Please be quiet.  You've accepted the benefits of this great country to have an education, get a job, have a family that loves you and cares for you, and what did you do?  You turned around and you provided assistance to people who have sworn an oath to destroy everything that we hold dear.  Yes you did. Yes you did.  Please be quiet.  You had your say.  Now the Court is going to have its say.

Terrorists who swore an oath to destroy everything that we stand for; that's what you did.  And then you come in and you want to say that somehow blame the government or your race for what you did or somehow state that you didn't know that you were providing aid to terrorists and people who were dangerous.  That's absolute nonsense.  Absolute nonsense.

When you stepped out of this country you knew exactly what you were doing and you knew exactly what was going to happen.  You deserve every second of every minute, of every hour, of every day, of every month, of every year you're going to spend behind bars.  The Court adopts the factual findings and guideline applications in the presentence report.

It is the judgment of this Court that the defendant

Warren C. Clark is hereby sentenced to 120 months in the custody of Bureau of Prisons.  Upon the release from imprisonment, the defendant shall be placed on supervised release for a term of 10 years as an added measure of deterrence and to protect the public from future crimes by this defendant.

MR. McINTYRE:  Your Honor, I was going to -- (indiscernible) lifetime term of supervised release.

THE COURT:  Okay.

MR. McINTYRE:  Pardon --

THE COURT:  Sorry.

MR. McINTYRE:  (indiscernible).

THE COURT:  Supervised release for life as an added measure of deterrence and to protect the public from future crimes by this defendant.  The defendant shall report in person to the probation office in the district to which the defendant is released within 72 hours of being released from the Bureau of Prisons.

While on supervised release, you shall not commit another federal, state, or local crime.  You shall comply with the standard conditions that have been adopted by this Court under General Order 2017-1, abide by any mandatory conditions required by law, and shall comply with the additional conditions as reflected in the appendix of the presentence report.

The Court finds that the defendant does not have the ability to pay a fine and the Court will waive a fine in this case.  It is further ordered that the defendant shall pay the United States a special assessment of $100.  Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows.

The defendant shall begin payment immediately, any unpaid balance due in payments greater than $25 per quarter or 50 percent of any wages earned while in prison.  The defendant will receive credit for any payments made through the Bureau of Prison's Inmate Financial Responsibility Program and any balance remaining after release from imprisonment shall be paid in monthly installments of $25 to commence 60 days after release to a term of supervision and payments be made to the United States District Clerk's Office, Southern District of Texas.

I understand under the plea agreement there are certain agreements that have been made regarding appeals. However, I'm going to give counsel, you a copy of the defendant's rights to appeal in this case.  Please go over those with Mr. Clark and make sure that he understands those.

Based on the plea agreement, is there anything further that the government has to do in this case?

MR. McINTYRE:  No, Your Honor.

THE COURT:  Okay.  Counsel?

MR. DOYLE:  (indiscernible) matter.  Mr. Clark's been (indiscernible).

THE COURT:  I've read the argument.  The -- respectfully, the request is denied.

MR. DOYLE:  Your Honor, might I make one more comment on that?

THE COURT:  You may.

MR. DOYLE:  (indiscernible) custody, which was two months.  The government agrees that request.

THE COURT:  But it's whatever the Bureau of Prisons believes is appropriate.  I'm not stepping in and telling the Bureau of Prisons what credit he gets and what credit he doesn't.  The Bureau of Prisons will determine that.  So, if that's a problem, let me know, Mr. McIntyre, but my understanding is the BOP determines credit.  The minute I step in and start determining credit, then it messes up the calculation.  I've learned that the hard way.  I'm not doing it.

MR. McINTYRE:  Yes, Your Honor.

THE COURT:  Especially, I don't see a reason to do it in this case.

MR. McINTYRE:  And the government would move to dismiss the indictment (indiscernible).

THE COURT:  The indictment is hereby dismissed.

MR. McINTYRE:  Yes, Your Honor.

THE COURT:  Mr. Clark, good luck to you, sir.  I truly hope that you understand someday the error of your ways, which it sounds like you're not going to ever, but that's your call.  And there's really nothing further to talk about here.

Counsel, you all may be excused.  Mr. Clark, good luck to you, sir.

MR. McINTYRE:  Thank you, Your Honor.

MR. DOYLE:  Thank you, Judge.

THE COURT:  We'll stand in adjournment in this matter.

(Hearing adjourned at 10:49 AM)

* * * * *

                                I  N  D  E  X


                                RULINGS

                                              Page      Line

Sentence imposed                              18        25

C E R T I F I C A T I O N

     I, Sonya Ledanski Hyde, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

*Sonya M. Ledanski Hyde*

Sonya Ledanski Hyde

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date:   June 25, 2025